CONNIE RYHERD, Plaintiff-Appellant, v. GENERAL CABLE COMPANY, Defendant-Appellee.

Fourth District   No. 4—86—0331

Opinion filed November 12, 1986.

2

Kenneth R. Baughman, of Monticello, for appellant.

Rody P. Biggert and Rex L. Sessions, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

Plaintiff filed suit claiming she was terminated from her job for exercising her rights under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 et seq.). Her action followed an adverse decision entered by an arbitrator upon full exhaustion of the grievance procedures provided for in the collective-bargaining agreement in effect between plaintiff's former employer and her union. The circuit court of Piatt County held that the plaintiff's retaliatory-discharge tort action was preempted by Federal labor law and granted the defendant's motion for summary judgment. Plaintiff appeals, and for the reasons stated below, we affirm.

The plaintiff, Connie Ryherd, was hired by the defendant as an hourly employee on August 16, 1978. Throughout her employment with the defendant, plaintiff was a member of the International Brotherhood of Electrical Workers, Local No. 1993 (union). As such, the terms of the plaintiff's employment, and her relationship with her employer, were governed by a collective-bargaining agreement in effect between the defendant and the union. That agreement essentially recognized the exclusive right of the defendant to manage its plant and direct the working force except as limited by the specific terms of the contract. The agreement also set up a four-step grievance procedure for union employees who had been disciplined or discharged. The final step in any dispute, according to the agreement, was "final and binding" arbitration.

On March 5, 1981, plaintiff suffered a work-related injury, and did not return to work until February 24, 1983. In the interim, plaintiff received a lump-sum workers' compensation settlement totalling $40,210. Plaintiff also took a medical leave of absence beginning in

April of 1983 and was released to go back to work in January of 1984.

However, plaintiff's employment with the defendant was terminated on February 2, 1984. The official reasons given for her termination were "a lack of desire and physical inability to function as a full-time employee." On February 6, 1984, plaintiff filed a grievance through her union under the collective-bargaining agreement alleging she had been discharged in part due to time missed with work-related injuries and in part because she had filed a claim for workers' compensation.

Plaintiff's grievance was ultimately submitted to final and binding arbitration at a hearing held August 17, 1984. From the facts and evidence adduced at the arbitration hearing, we may summarize the plaintiff's term of employment as follows: on December 15, 1979, elected to take layoff; recalled to work on February 11, 1980; elected to take layoff on May 5, 1980; recalled to work on February 22, 1981; suffered work-related injury on March 5, 1981; returned to work on February 24, 1983, or almost two years after suffering original work-related injury; took medical leave of absence from February 28, 1983, to March 29, 1983, due to allergic reaction; on March 19, 1983, while on medical leave, was involved in car accident and suffered neck or whiplash injury; returned to work on March 29, 1983; took several sick days during the first two weeks of April 1983; on April 13, 1983, took another medical leave of absence due to muscle strain as aggravation of previous whiplash injury; apparently released to go back to work in January of 1984; employment with defendant terminated on February 2, 1984, due to excessive absenteeism, allegedly excluding work-related leaves of absence, with the company also complaining that the plaintiff exhibited neither a physical ability nor a desire to continue on as a full-time employee.

On November 2, 1984, the arbitrator rendered his decision denying the plaintiff's grievance and claim for reinstatement. The arbitrator concluded that plaintiff was discharged "solely and wholly because of her absenteeism record" and that the defendant's action in terminating her employment was proper.

Plaintiff thereafter filed a three-count complaint against the defendant on April 2, 1984. Counts II and III were later dismissed upon motion of the plaintiff. Count I sounded in retaliatory discharge, alleging the plaintiff had been terminated for filing a workers' compensation claim and subsequently obtaining a lump-sum settlement. On October 25, 1985, the defendant filed a motion for summary judgment asserting that the plaintiff's State tort action was preempted by section 301 of the Labor-Management Relations Act (LMRA) (29 U.S.C.

sec. 185(a) (1982)).

By its memorandum of opinion dated January 17, 1986, the circuit court of Piatt County agreed with the defendant and granted the motion for summary judgment. Relying on the United States Supreme Court's decision in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912, the court ruled that the State tort action for retaliatory discharge was "inextricably intertwined with consideration of the terms of the labor contract." Accordingly, under the holding in *Allis-Chalmers*, the court found that the complaint was preempted by Federal labor law.

In the appeal of this matter, we consider the precise issue to be whether a State tort action for retaliatory discharge brought by a union employee with a collective-bargaining agreement in effect is governed by section 301 of the LMRA, where the employee alleges she was fired for exercising her rights under the Workers' Compensation Act and where the employee has submitted to the full range of grievance and arbitration procedures available under the agreement. Plaintiff claims her authority to maintain this action is grounded in section 4(h) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h)), which makes it unlawful for any employer to interfere with or discriminate against an employee who exercises her right to remedies under the Act. Plaintiff further believes arbitration is an inappropriate forum in which to decide matters of public policy raised by her lawsuit.

In light of the arguments raised, we deem it provident initially to embark upon a review of the retaliatory-discharge tort as it has evolved in Illinois. The tort was first recognized in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, where an at-will employee was allegedly discharged in retaliation for filing a claim under the Workers' Compensation Act. The court in *Kelsay* considered that the Act was passed in furtherance of a clearly mandated public policy: to afford protection to employees by providing them with a comprehensive scheme for prompt and equitable compensation of their injuries. In order to uphold the public policy that injured workers be allowed to freely file workers' compensation claims, the court reasoned that a cause of action for retaliatory discharge must be granted. Specifically, the *Kelsay* court believed this policy could only be effectively enforced by allowing a civil remedy for damages distinct from the possibility of criminal sanctions under section 4(h) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h)). In addition, the court specifically held that a claim for punitive damages should arise where a discharge violates public policy:

"The imposition on the employer of the small additional obliga-

tion to pay a wrongfully discharged employee compensation would do little to discourage the practice of retaliatory discharge, which mocks the public policy of this State as announced in the Workmen's Compensation Act. In the absence of other effective means of deterrence, punitive damages must be permitted to prevent the discharging of employees for filing workmen's compensation claims." 74 Ill. 2d 172, 187, 384 N.E.2d 353, 359.

The tort was later extended by the court, again on public policy grounds, in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. In that case, an at-will employee was allegedly discharged for supplying information to law-enforcement authorities regarding possible criminal conduct by co-workers. The court in *Palmateer* stressed that the tort of retaliatory discharge remains an exception to the general common law rule that an employer may discharge an at-will employee at any time for any cause or for no cause. (85 Ill. 2d 124, 128, 421 N.E.2d 876, 878; see also *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1357.) Moreover, the *Palmateer* court reiterated that "[t]he foundation of the tort of retaliatory discharge lies in the protection of public policy." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133, 421 N.E.2d 876, 880.) The court then went on to hold that a cause of action for retaliatory discharge was necessary in this instance to promote citizen crime-fighters and to ensure that the public policy behind enforcement of the Criminal Code of 1961 would not be frustrated. Specifically, in commenting on what is necessary to state a cause of action for retaliatory discharge, the court announced:

"All that is required is that the employer discharge the employee in retaliation for the employee's activities, and that the discharge be in contravention of a clearly mandated public policy." 85 Ill. 2d 124, 134, 421 N.E.2d 876, 881.

Still, up to this point, our supreme court had determined that the cause of action existed only in situations involving at-will employees. The several appellate courts which had considered whether the tort was also available to unionized employees covered by collective-bargaining agreements were in disagreement. (Compare, *e.g., Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, with *Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840, 439 N.E.2d 1053.) Moreover, the Seventh Circuit Court of Appeals has refused to extend the tort to a union employee. *Lamb v. Briggs Manufacturing* (7th Cir. 1983), 700 F.2d 1092.

In this context the supreme court decided to resolve the question under the facts in three consolidated cases in *Midgett v. Sackett-Chi-*

*cago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280. Several union employees filed suit in *Midgett* alleging they had been discharged in retaliation for filing workers' compensation claims. In each instance, the plaintiffs had resorted first to recovery in tort without invoking the grievance procedures available to them under their respective collective-bargaining agreements.

The court in *Midgett* considered that, "in order to provide a complete remedy it is necessary that the victim of retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement." (105 Ill. 2d 143, 149, 473 N.E.2d 1280, 1283.) Further recognizing that an essential factor in *Kelsay* was the allowance of punitive damages against an offending employer for a discharge in violation of public policy, the court stated that "there is no reason to afford a tort remedy to at-will employees but to limit union members to contractual remedies under their collective-bargaining agreements." 105 Ill. 2d 143, 150, 473 N.E.2d 1280, 1283-84.

Continuing, the court noted that generally the only remedy for a union member's successful contract grievance claim is job reinstatement and an award of full back pay. The unavailability of a potential punitive damage award, the court reasoned, would not only represent an incomplete remedy to employees discharged in this manner, but would also preclude an available sanction against a violator of an important public policy of this State. The court then concluded:

> "It would be unreasonable to immunize from punitive damages an employer who unjustly discharges a union employee, while allowing the imposition of punitive damages against an employer who unfairly terminates a nonunion employee. The public policy against retaliatory discharges [to ensure the protection of workers covered by the Workers' Compensation Act] applies with equal force in both situations." *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 150, 473 N.E.2d 1280, 1284.

Furthermore, the court found "unconvincing" the argument that if union employees were allowed the tort action as recognized in *Kelsay*, it would perceptibly affect the Federal labor-law policy favoring industrial stability through the use of arbitration in union agreements. (105 Ill. 2d 143, 151, 473 N.E.2d 1280, 1284.) Stating that the tort cause of action merely provides a union employee with an additional remedy in situations involving violations of clearly mandated public policy, the court noted that the United States Supreme Court had previously allowed employees covered under collective-bargaining agreements with arbitration provisions to bring claims founded on violations of Federal

statutory rights against their employers. (105 Ill. 2d 143, 151, 473 N.E.2d 1280, 1284.) The court further noted that where an employee's cause of action was based on State statutory rights, other jurisdictions had reached similar conclusions. (105 Ill. 2d 143, 152, 473 N.E.2d 1280, 1284.) The *Midgett* court concluded that a plaintiff need not exhaust the full range of his contractual remedies to bring an action in tort; instead, all that a plaintiff must allege is a retaliatory discharge in violation of public policy. 105 Ill. 2d 143, 152, 473 N.E.2d 1280, 1285.

Thus, *Midgett* represents a significant turning point in the law of retaliatory discharge in Illinois for two reasons: first, it extended the cause of action to union employees, and second, it allowed those employees to maintain their action in State court without first resorting to grievance remedies provided under a collective-bargaining agreement. In so doing, the court relied upon important, clearly mandated public policy concerns, determining that any discharge in contravention of such policies would be held actionable for the benefit of all employees, thereby entitling them to seek punitive damages. The court declined, though, to discuss the issue of Federal preemption in *Midgett* because it was not raised by the parties in either the trial or appellate courts. *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 153, 473 N.E.2d 1280, 1285.

Nevertheless, the question of preemption in matters concerning union employees has arisen in connection with section 301 of the LMRA. That statute provides that the Federal courts have jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." (29 U.S.C. sec. 185(a) (1982).) The United States Supreme Court has emphasized that the subject matter of section 301 is particularly one that calls for application of uniform Federal law, concluding that Congress intended doctrines of Federal labor law to prevail over incompatible local rules. *Local 174, International Brotherhood of Teamsters v. Lucas Flour Co.* (1962), 369 U.S. 95, 102-03, 7 L. Ed. 2d 593, 598, 82 S. Ct. 571, 576.

Along those lines, the Supreme Court recently handed down its far-reaching decision on Federal labor-law preemption in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904. In that case the court considered whether section 301 preempts a State law tort action for bad-faith delay in making disability benefit payments due under a collective-bargaining agreement.

The plaintiff in *Allis-Chalmers* suffered a nonoccupational back injury, filed a disability claim under a plan provided for in the collective-bargaining agreement in force between his employer and his union, and

began receiving payments. However, the benefits were periodically discontinued by the employer's insurance carrier. The same agreement which incorporated the group health and disability plan also established a four-step grievance procedure for employee grievances, the last step being final and binding arbitration. Wisconsin law made it a tortious act for an employer or his insurer to act in bad faith in handling disability claims. Instead of instituting a grievance claim, then, the plaintiff filed suit in Wisconsin State court alleging bad faith in the handling of his claim by his employer and its insurer.

The Wisconsin circuit court, in considering cross-motions for summary judgment, held that the claim arose under section 301 and, alternatively, if it was deemed a claim under tort law instead of section 301, it was still preempted by Federal labor law. The Wisconsin court of appeals affirmed. The Supreme Court of Wisconsin, however, reversed, holding that under Wisconsin law the tort of bad faith is a State tort distinguishable from a bad-faith breach-of-contract claim.

The United States Supreme Court reversed, holding that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," that claim must either be treated as a section 301 claim or dismissed as preempted by Federal labor law. *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

The court considered that the interest in uniformity and predictability of result require labor-contract disputes to be subject to uniform Federal interpretation. The court stated:

"Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of section 301 by re-labeling their contract claims as claims for tortious breach of contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.)

The court concluded that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements." 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

Turning to its evaluation of the Wisconsin bad-faith tort claim, the

court's analysis focused on whether the action conferred nonnegotiable State-law rights on employers or employees independent of any right established by contract or "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." (471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) Recognizing that "[t]he duties imposed and rights established through the state tort thus derive from the rights and obligations established by the contract," the court found any attempt to assess liability "inevitably will involve contract interpretation." (471 U.S. 202, 217, 85 L. Ed. 2d 206, 219, 105 S. Ct. 1904, 1914-15.) The court concluded that Congress intended this type of "derivative tort" to be preempted by section 301, thereby "preserv[ing] the central role of arbitration in our 'system of industrial self-government.'" 471 U.S. 202, 219, 85 L. Ed. 2d 206, 220, 105 S. Ct. 1904, 1915, quoting *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 581, 4 L. Ed. 2d 1409, 1416-17, 80 S. Ct. 1347, 1352.

Commenting further on the significance of preserving the effectiveness of arbitration, the court stated:

"Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if section 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, [citation], as well as eviscerate a central tenet of federal labor-contract law under section 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 219-20, 85 L. Ed. 2d 206, 220-21, 105 S. Ct. 1904, 1915-16.

Still, the court was careful to admonish that not every State lawsuit "asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by section 301." (471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.) Rather, "[t]he full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

It is safe to say that a majority of lower Federal courts to consider the issue after *Allis-Chalmers* have interpreted the preemptive effect of that decision rather broadly. (See, *e.g., National Metalcrafters v. McNeil* (7th Cir. 1986), 784 F.2d 817 (application of Illinois wage-payment statute to dispute over vacation pay preempted by section 301); *Truex v. Garrett Freightlines, Inc.* (9th Cir. 1985), 784 F.2d 1347 (intentional infliction of emotional distress and harassment claims preempted by section 301); *Gibson v. AT & T Technologies, Inc.* (7th Cir. 1986), 782 F.2d 686 (suit brought under State-law fraud theory held preempted by section 301); *Bell v. Gas Service Co.* (8th Cir. 1985), 778 F.2d 512 (fraudulent-misrepresentation claim arose from contract rights and was preempted); *Mitchell v. Pepsi-Cola Bottlers, Inc.* (7th Cir. 1985), 772 F.2d 342, *cert. denied* (1986), 475 U.S. 1047, 89 L. Ed. 2d 575, 106 S. Ct. 1266 (constructive discharge action alleging misrepresentation held preempted); *Strachan v. Union Oil Co.* (5th Cir. 1985), 768 F.2d 703 (various State tort claims arising out of discharge for suspicion of drug use held preempted).) Specifically, most post–*Allis-Chalmers* decisions have held that State tort actions alleging discharge for filing a workers' compensation claim are preempted by section 301 where the right to discharge was covered by a collective-bargaining agreement's "just cause" provision or similar standard of protection. *Vantine v. Elkhart Brass Manufacturing Co.* (7th Cir. 1985), 762 F.2d 511 (Indiana State law which recognized retaliatory discharge for at-will employees only held preempted when action was brought by a union employee); *Waycaster v. AT & T Technologies, Inc.* (N.D. Ill. 1986), 636 F. Supp. 1052, 1058 (conclusion "inescapable" that Illinois State remedies for retaliatory discharge of a union employee remain "inextricably intertwined" with a collective-bargaining agreement's "just cause" provision); *Clark v. Momence Packing Co.* (C.D. Ill. 1985), 637 F. Supp. 16 (any consideration of retaliatory-discharge claim involves inquiry into the cause for the discharge, and thus is "inextricably intertwined" with a consideration of the terms of labor contract); *Lingle v. Norge Division of Magic Chef, Inc.* (S.D. Ill. 1985), 618 F. Supp. 1448 (retaliatory discharge for filing workers' compensation claim preempted by section 301); *Johnson v. Hussmann Corp.* (E.D. Mo. 1985), 610 F. Supp. 757 (Missouri retaliatory-discharge law relates to and directly affects the contractual relationship between employer and employee and thus is preempted by Federal labor law); but see *Sutton v. Southwest Forest Industries, Inc.* (D. Kan. 1985), 628 F. Supp. 1034 (State law not preempted due to legitimate and substantial interest in protecting employees from termination for filing workers' compensation claims).

In addition, the Illinois Supreme Court has on two recent occasions considered the matter of Federal labor-law preemption after *Allis-Chalmers*, although neither case is on all fours with the cause before us now. In *Koehler v. Illinois Central Gulf R.R. Co.* (1985), 109 Ill. 2d 473, 488 N.E.2d 542, the plaintiff, a railroad worker, filed suit sounding in retaliatory discharge alleging he was fired for having filed an action under the Federal Employers' Liability Act (45 U.S.C. sec. 51 *et seq.* (1982)). That Federal statute is applicable to interstate railroads in their capacity as employers and imposes liability on railroad employers for injuries to employees caused by an employer's negligence. The court in *Koehler* held that, because the plaintiff was specifically covered under the Federal Railway Labor Act (RLA) (45 U.S.C. sec. 151 *et seq.* (1982)), the RLA preempts a State-law tort action alleging retaliatory discharge for having filed suit under a Federal statute. The court, however, did not discuss *Allis-Chalmers*.

Next, in *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 489 N.E.2d 1367, the plaintiff charged his employer with retaliatory discharge and his union with civil conspiracy in furtherance of that discharge. The court, in considering whether the plaintiff's cause of action against the defendant union for civil conspiracy was preempted by Federal labor law, noted that issues concerning a union's duty of fair representation frequently arise in the context of suits brought pursuant to section 301. Because the plaintiff's complaint alleged he was discharged in violation of the "justifiable cause" provision of a collective-bargaining agreement, and alleged as well that the defendant breached its statutory duty of fair representation, the court believed the plaintiff had stated a violation of a duty founded in Federal statutes, and therefore Federal law governed. The *Bartley* court then specifically held that the plaintiff's cause of action against the defendant union for civil conspiracy was preempted by Federal law. The court did not rule, however, on the retaliatory discharge action against the employer.

Again, the particular retaliatory discharge action here at issue is based upon a so-called "public policy exception," the goal being to prevent unscrupulous employers from terminating injured employees who exercise their statutory right to workers' compensation. We note that strong public policy grounds have previously been relied upon to uphold a cause of action in the face of Federal labor-contract preemption arguments. In *Garibaldi v. Lucky Food Stores, Inc.* (9th Cir. 1984), 726 F.2d 1367, *cert. denied* (1985), 471 U.S. 1099, 85 L. Ed. 2d 839, 105 S. Ct. 2319, the plaintiff alleged wrongful discharge when he was fired for informing local health department officials he was delivering a load of spoiled milk even though his employer had instructed him to go ahead

and deliver the bad milk. Plaintiff was a union member who initially went through the grievance procedure outlined under the collective-bargaining agreement; an arbitrator ruled he was discharged for cause and denied his grievance. In considering the matter, the Ninth Circuit Court of Appeals held that the plaintiff's claim for "wrongful termination," based upon a clear violation of public policy, was not preempted by section 301. The court explained that a claim grounded in State law for wrongful termination for public policy reasons poses no significant threat to the collective-bargaining process and does not alter the economic relationship between employer and employee. The court reasoned that the remedy is in tort, distinct from any contractual remedy made available under the collective-bargaining agreement. The court thus held that allowing the plaintiff's claim "furthers the state's interest in protecting the general public—an interest which transcends the employment relationship." 726 F.2d 1367, 1375.

Similarly, the Tenth Circuit Court of Appeals held that a claim brought pursuant to an Oklahoma statute prohibiting employers from discharging employees for filing workers' compensation claims was not preempted in *Peabody Galion v. Dollar* (10th Cir. 1981), 666 F.2d 1309. The court in *Peabody Galion* reasoned that the statutory remedy pursued by the plaintiff in no way conflicted with collective bargaining or impeded any of the policies and purposes of the Federal labor statutes. (666 F.2d 1309, 1313.) The court further recognized that the State "has a substantial interest in regulation of the conduct at issue and the state's interest is one that does not threaten undue interference with the federal regulatory scheme." (666 F.2d 1309, 1315.) The court in *Peabody Galion* then concluded that the conduct at issue, discharge of workers because they pursued compensation claims, "has nothing whatsoever to do with union organization or collective bargaining." (666 F.2d 1309, 1316.) Likewise, the underlying activity, filing workers' compensation claims under State law, "has no tendency to conflict with *** any federal labor law." 666 F.2d 1309, 1316.

Although these cases were decided prior to *Allis-Chalmers*, several subsequent decisions have strongly implied that the public policy rationale employed therein remains viable. In *Evangelista v. Inlandboatmen's Union of the Pacific* (9th Cir. 1985), 777 F.2d 1390, the Ninth Circuit held that the plaintiff's wrongful-discharge claim concerning which section of a collective-bargaining agreement authorized a reduction in seniority was preempted by Federal law. However, the *Evangelista* court expressly distinguished *Garibaldi* as involving a violation of State public policy. The court reiterated that such a claim represents no significant threat to the collective-bargaining process while it does fur-

ther a State interest in protecting the general public. (777 F.2d 1390, 1401.) *Garibaldi* was again distinguished in *Truex v. Garrett Freightlines, Inc.* (9th Cir. 1985), 784 F.2d 1347, 1353, where the court noted that the wrongful-termination claim in *Garibaldi* "fell outside the scope of the collective bargaining agreement and was not preempted because it was based on a violation of state public policy." (784 F.2d 1347, 1353.) In *Harper v. San Diego Transit Corp.* (9th Cir. 1985), 764 F.2d 663, the court held that the plaintiff's cause of action for wrongful termination based on absenteeism amounted to a Federal claim under section 301 and thus was preempted. The court, however, analyzed *Allis-Chalmers* and held that the decision in *Garibaldi* was "in accord" with that case. Explaining further, the court stated that a claim for wrongful discharge in violation of public policy "survives federal preemption. This tort clearly implicates 'proscribe[d] conduct,' 'state-law rights and obligations,' and 'non-negotiable state-law rights' within the meaning of *Allis-Chalmers*." (764 F.2d 663, 668.) Finally, one Federal appeals court, citing to *Peabody Galion*, stated the following in a footnote: "Because workers' compensation rights are rooted in state law, rather than the collective agreement, and because the cause of action in question is part-and-parcel of the state's worker's compensation scheme, we do not believe it is pre-empted by federal labor law." *Herring v. Prince Macaroni of New Jersey, Inc.* (3d Cir. 1986), 799 F.2d 120, 124, 123 L.R.R.M. (BNA) 2165, 2167 n.2 (1986); see also *Daughtery v. Lucky Stores, Inc.* (C.D. Ill. 1985), 603 F. Supp. 975 (no preemption of wrongful-termination claim in the face of public policy that furthers State interests in protecting the public which transcend the employment relationship); *Messenger v. Volkswagen of America, Inc.* (S.D. W.Va. 1984), 585 F. Supp. 565 (wrong to which the tort action of retaliatory discharge is aimed is not the act of discharging, but the act in contravention of public policy in carrying out the discharge).

We further note that defendant relies heavily upon the Seventh Circuit Court of Appeals' decision, rendered after *Allis-Chalmers*, in *Vantine v. Elkhart Brass Manufacturing Co.* (7th Cir. 1985), 762 F.2d 511. However, we do not believe *Vantine* is necessarily dispositive of the present matter. In *Vantine* the plaintiff, a union employee, filed a retaliatory discharge action alleging he had been fired for filing a workers' compensation claim under the Indiana act. An arbitrator concluded that the defendant acted properly in dismissing the plaintiff under the collective-bargaining agreement, and plaintiff then filed his civil action.

The court in *Vantine* began by noting that Indiana recognized a cause of action for retaliatory discharge as a remedy for at-will employ-

ees only to prevent employers from coercing them into foregoing their workers' compensation rights. The court held that since the employee was covered by a collective-bargaining agreement, his interest in pursuing workers' compensation benefits without reprisal were adequately protected by the labor agreement's "just cause" provision. The court concluded that "because an allegation of discharge in retaliation for filing a workmen's compensation claim is an allegation of a breach of the collective bargaining agreement, it arises under section 301 *** rather than the Indiana Workmen's Compensation Act." *Vantine v. Elkhart Brass Manufacturing Co.* (7th Cir. 1985), 762 F.2d 511, 517.

The court in *Vantine*, though, was construing Indiana law where the tort was not extended to employees covered by collective-bargaining agreements. Moreover, the court in *Vantine* gave little apparent consideration to public policy concerns inherent in the tort as recognized in Illinois.

Certainly, then, we can conclude that labor preemption is a complex and confused area of the law for which there are no easy answers. While preemption is generally a matter of congressional intent, labor statutes such as section 301 of the LMRA provide little or no guidance as to what aspects of State law Congress intended to preempt. One thing is clear, though: Federal law does not cover every dispute that may arise out of an employment or union relationship (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904), and thus total preemption is both impractical and impossible.

●▌ To reiterate, the gravamen of the retaliatory discharge action lies in the violation of clearly mandated public policy. The supreme court in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280, determined this public policy basis should apply with equal force to situations involving both at-will and unionized employees. Moreover, *Midgett* stands for the proposition that the tort remedy is available in the first instance without resort to contractual grievance procedures and that the possibility of a punitive damage award will furnish an appropriate deterrent effect on unscrupulous employers. We also note the principle advanced in *Midgett* that a retaliatory discharge suit in tort exists independent of any contract remedy an employee may have under a collective-bargaining agreement has recently been reaffirmed by our supreme court in *Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545.

On the other hand, the clear mandate of *Allis-Chalmers* is that where resolution of a State-law claim is substantially dependent upon analysis of the terms of an agreement made between parties to a labor contract, then the claim must be treated as either arising under section

301 or dismissed as preempted by Federal labor law. Conversely, *Midgett* did not decide the preemption issue because it was not raised in the courts below.

▉ We believe only one conclusion will resolve the legal quagmire before us now and still remain consonant with the various and sundry judicial pronouncements on the subject. Accordingly, we make the following distinctions. We expressly recognize that once public policy is established, either by a court of last resort or by legislative enactment, then matters of public policy are within the province of an arbitrator to decide factually while construing the agreement before him. An arbitrator need only determine if the complained-of-facts fall within the expression of public policy previously established.

Thus, should a union employee raise and litigate as one of his grievances under a collective-bargaining agreement a retaliatory discharge for exercising rights under the Workers' Compensation Act, retaliatory discharge would be subsumed within the broader, contractual aspects of wrongful discharge. The action would therefore relate to consideration of the just cause or other protective provisions in the contract and would be within the power of an arbitrator to determine. An arbitrator would be fully competent to decide whether such a discharge occurred under the facts. The sole issues would remain why an employee was discharged and whether that discharge was in contravention of clearly mandated public policy. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.

●▉ Continuing our analysis, where, as here, the ultimate arbitral decision is adverse to the employee, we believe any subsequent judicial inquiry will involve an interpretation of the substantive provisions of a labor contract. Consequently, any such action must of necessity be treated as though the claim arose under section 301. Examination of the matter will be "substantially dependent" upon an analysis of the terms of the labor agreement as interpreted. Likewise, evaluation or review of an arbitrator's decision will be "inextricably intertwined" with consideration of the contract, the court's basic function being whether the award draws its essence from the agreement. As a result, an employee would be barred from relitigating as an independent State-tort cause of action retaliatory-discharge issues already raised under his grievance procedures, whether or not the discharge claim represented the entire thrust of the employee's grievance or whether it was part-and-parcel of several allegedly unlawful grounds for termination. (Accord, *Elia v. Industrial Personnel Corp.* (1984), 125 Ill. App. 3d 1026, 466 N.E.2d 1054; *Bertling v. Roadway Express, Inc.* (1984), 121 Ill. App. 3d 60, 459 N.E.2d 265.) All that is necessary is that the

grievance allege substantially the same accusations of wrongful treatment in violation of already-recognized public policy as are raised in the complaint.

Having decided such a claim arises under section 301, we do not mean to imply that an unsuccessful employee is absolutely precluded from bringing a subsequent action pursuant to that Federal statute. Rather, an employee may maintain his section 301 action so long as he otherwise meets the prerequisites for that cause of action. See *DelCostello v. International Brotherhood of Teamsters* (1983), 462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281; *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 1 L. Ed. 2d 580, 85 S. Ct. 614.

■ In sum, then, we hold that arbitration is a proper avenue to decide matters of discharge in violation of judicially or legislatively established policy. Where a union employee covered by a collective-bargaining agreement alleges a retaliatory discharge in his contractual grievance procedures for exercising workers' compensation rights, and where the final decision by an arbitrator is adverse to his position, then the claim is to be considered as arising under section 301 of the Labor Management Relations Act and the employee is barred from attempting to allege an independent State-tort cause of action. We believe this result comports with the importance of the public policy exception as recognized in Illinois as well as Federal concerns favoring uniformity in labor law and the use of agreed-upon arbitration.

However, in reaching our decision, we expressly decline to consider how *Allis-Chalmers* relates to a situation where a union employee first files a complaint in circuit court sounding in retaliatory discharge without at all invoking his contractual grievance remedies, as was the case in *Midgett*. This is not the factual setting before us, but rather represents the facts currently under consideration by our supreme court in *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1.

From the foregoing, we therefore hold that the plaintiff's cause of action must be treated as a section 301 claim. Accordingly, we affirm the order of the circuit court dismissing the case.

Affirmed.

WEBBER and SPITZ, JJ., concur.