JAMES T. BECKMAN, Plaintiff-Appellant, v. FREEMAN UNITED COAL MINING COMPANY, Defendant-Appellee.

Fourth District   No. 4—86—0274

Opinion filed December 15, 1986.

Steven W. Berg, of Springfield, for appellant.

Murvel Pretorius, Jr., and Rebecca S. Riddell, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

At issue in this appeal is the decision by the circuit court of Macoupin County to dismiss the plaintiff's tort action sounding in retaliatory discharge with prejudice. The court found that the lawsuit was barred due to a prior arbitration proceeding. An arbitrator had previously determined that the defendant did not violate the collective-bargaining agreement in force between it and the plaintiff's bargaining unit when it terminated the plaintiff's employment for an unexcused absence from work for two consecutive days. Plaintiff's subsequent suit sought damages for a discharge allegedly in retaliation for the exercise of rights under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.4 *et seq.*).

We reverse and remand.

While working as a roof bolter during his shift at the defendant's coal mine on August 6, 1985, plaintiff, a union employee, was injured when a rock fell and hit him about the helmet, shoulder, and arm. He was taken by ambulance to a hospital, where his injuries were diagnosed as a contusion to the head and left forearm as well as cervical strain. X rays of the cervical spine and forearm, however, revealed no fractures. A physician prescribed a muscle relaxant and pain killer, told the plaintiff to take the rest of the shift off, and instructed that he could return to work the next night.

Plaintiff did indeed work his shifts on August 7 and 8 but did not *report* on August 9, a Friday. Plaintiff called the defendant's answering machine prior to the start of that shift, stating he was having trouble with his neck and was going to have it checked. He also visited the mine site that day to pick up his check and to inquire about the procedure for having his neck examined further. On Monday, August 12, plaintiff again did not report to work, explaining in a telephone call to his employer's answering machine that he had been unable to get to a doctor on Friday, but was going to see one that day. Apparently, according to the evidence and testimony introduced at the arbitration hearing, plaintiff did go to a physician's office on August 12, but was examined only by a registered nurse, who wrote out a return-to-work slip to excuse the plaintiff for the two days he missed.

Plaintiff reported for his normal shift on August 13. On August 14, however, the plaintiff was informed that he was being suspended with intent to discharge. His employer charged him with two consecutive days of absence without consent or proper proof of illness, under

article XXII(i)(4) of the collective-bargaining agreement, which states:

"When any Employee absents himself from his work for a period of two (2) consecutive days without the consent of the Employer, other than because of proven sickness, he may be discharged."

The plaintiff's union that same day filed a grievance on his behalf requesting immediate arbitration pursuant to the collective-bargaining agreement. The defendant later announced on August 16 it would proceed with the discharge.

The arbitration hearing was held August 21, 1985. The arbitrator considered that a discharge under article XXII(i)(4) raised these specific questions for resolution: whether the plaintiff was absent from work for two consecutive days, whether he had the consent of the company to be absent, and whether the plaintiff presented proper proof of illness. In making his written findings released August 30, 1985, the arbitrator concluded that the company did not violate article XXII(i)(4) when it discharged the plaintiff. Specifically, the arbitrator found that the plaintiff was absent from work for two consecutive days without consent and that he failed to provide proof he was unable to work on those two days. The arbitrator then ruled he had "no alternative" but to deny the grievance.

Plaintiff filed the one-count complaint that is the subject of this appeal on November 14, 1985. In that complaint, plaintiff alleges that he suffered a work-related injury on August 6, 1985, and that he convalesced at home, purportedly upon the advice of a physician, from August 9 until August 12. Plaintiff further alleges that, "subsequent" to incurring his injury, he inquired about and initiated a claim under the Workers' Compensation Act. (The record does not reveal any particulars about this claim, however, such as when it was actually filed and the ultimate disposition, if any.) Continuing, plaintiff's complaint contends he was discharged from his employment with the defendant "in retaliation for sustaining an injury for which he was entitled to benefits" and for pursuing his claim under the Act. Finally, in the same one-count complaint, plaintiff avers that the defendant interfered with, coerced, and discriminated or attempted to discriminate against him in connection with the exercise of his rights under the Act in violation of section 4(h) (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)).

On January 17, 1986, the defendant presented its motion to dismiss the plaintiff's cause of action with prejudice pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), arguing that the plaintiff was barred by the prior

arbitration proceeding from litigating in court the cause of the discharge. The trial court agreed, opining that the prior arbitration covered the same issues the plaintiff sought to relitigate, and granted the motion on March 20, 1986. The plaintiff appeals.

■■ We first take occasion to acknowledge that a cause of action sounding in retaliatory discharge for the exercise of rights under the Workers' Compensation Act is steeped in public policy. The tort was judicially announced in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, where our supreme court recognized the public policy embodied in passage of the Act, and the continued need to uphold that policy, by creating a cause of action for retaliatory discharge. The court in *Kelsay* reasoned that an "employer's otherwise absolute power to terminate an employee at will should [not] prevail when that power is exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act." (74 Ill. 2d 172, 181, 384 N.E.2d 353, 357.) Noting that public policy would be seriously undermined if employers were permitted to discharge, or threaten to discharge, an employee who sought compensation under the Act, the court determined that punitive as well as compensatory damages should be recoverable to deter unscrupulous employers from engaging in such conduct. Thus the cause of action was deemed necessary even though not expressly provided for by the General Assembly.

Continued vitality of the cause of action lies in the protection of public policy, considered the "foundation" of the tort. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133, 421 N.E.2d 876, 880.) In order to state a cause of action for retaliatory discharge, an employee must show he was discharged in retaliation for his activities and that the discharge was in contravention of a clearly mandated public policy. 85 Ill. 2d 124, 134, 421 N.E.2d 876, 881.

A significant expansion of the tort occurred with the supreme court's opinion in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278. The court in *Midgett* deemed there was no reason to afford the tort remedy to at-will employees while at the same time limiting unionized employees to contractual remedies under their collective-bargaining agreements. (105 Ill. 2d 143, 150, 473 N.E.2d 1280, 1283-84.) The court reasoned that the public policy against retaliatory discharges to insure the protection of workers covered under the Act "applies with equal force in both situations" (105 Ill. 2d 143, 150, 473 N.E.2d 1280, 1284), as should the attendant possibility of a punitive-damage award. Accordingly, it was held that the cause of action could

be maintained by employees covered under a collective-bargaining agreement without first resorting to the grievance procedures outlined under such an agreement.

In so doing, the *Midgett* court ascertained that the victim of a retaliatory discharge is to be allowed an action in tort "independent of any contract remedy the employee may have based on the collective-bargaining agreement." (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 149, 473 N.E.2d 1280, 1283.) That principle, first recognized in *Kelsay*, was reaffirmed by the supreme court in its most recent pronouncement on the subject. *Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545, 552.

Under the facts in this matter, defendant calls our attention to the opinion in *Bertling v. Roadway Express, Inc.* (1984), 121 Ill. App. 3d 60, 459 N.E.2d 265. There, the court considered whether a union member who invokes the grievance procedure established by a collective-bargaining agreement and receives a determination that his discharge was for "just cause" may nevertheless litigate the issue of the employer's "motivation" in discharging him in a subsequent proceeding. (121 Ill. App. 3d 60, 63, 459 N.E.2d 265, 267.) The court first noted that the plaintiff failed to utilize the statutory procedure for vacating an arbitration award under the Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, par. 112) and thus was precluded from challenging the award in a collateral proceeding. Next, the *Bertling* court acknowledged that an arbitration award acts as a full and final adjustment of the controversy, having the force of an adjudication, based in part upon principles of *res judicata*. (*Bertling v. Roadway Express, Inc.* (1984), 121 Ill. App. 3d 60, 64, 459 N.E.2d 265, 268.) Inasmuch as the arbitration decision in *Bertling* involved substantially the same facts and accusations of unfair treatment alleged in the complaint, the court concluded that the plaintiff there could not assert he was discharged for other than just cause, and accordingly could not be heard to allege he was discharged for filing a workers' compensation claim. (121 Ill. App. 3d 60, 65, 459 N.E.2d 265, 268.) We note that the trial court below relied on *Bertling* in dismissing this plaintiff's cause of action.

The plaintiff cites *Elia v. Industrial Personnel Corp.* (1984), 125 Ill. App. 3d 1026, 466 N.E.2d 1054, rendered after *Bertling*, in support of his position. The plaintiff in *Elia*, a union employee, grieved a matter of claimed seniority only pursuant to his collective-bargaining agreement. His grievance was ultimately denied. He thereafter filed suit in tort alleging he was discharged in retaliation for filing a workers' compensation claim. It was undisputed in that case that the plain-

tiff's grievance never raised any claim of retaliatory discharge.

The court in *Elia* attempted to resolve its decision with that in *Bertling*, postulating that the *Bertling* court effectively refused to permit an employee to relitigate issues in circuit court which had been specifically raised and decided in a prior arbitration proceeding. The *Elia* court went on to find that the existence of a contractual remedy for wrongful discharge does not preclude an action in tort for retaliatory discharge, and thus, under *Bertling*, such an action will be barred "only where the employee raises the retaliatory discharge issue in the grievance procedures provided by the collective bargaining agreement." *Elia v. Industrial Personnel Corp.* (1984), 125 Ill. App. 3d 1026, 1029, 466 N.E.2d 1054, 1057.

We consider that *Elia* and *Bertling*, while instructive, are not dispositive of the cause before us now. First, both were decided prior to *Midgett*, at a time when the appellate court of this State was grappling with whether the retaliatory discharge action could be maintained at all by union employees. (Compare *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 407 N.E.2d 95, with *Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840, 439 N.E.2d 1053.) Those courts were operating under a different frame of reference without an express ruling by our supreme court that retaliatory discharge actions in tort should be afforded to all employees independent of any contract remedy provided in a collective-bargaining agreement. (*Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545; *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280.) Also, the precise finding in the arbitration proceeding in *Bertling* was that the discharge was for "just cause" under the contract and therefore was proper. Contrary to the defendant's assertions here, however, the arbitrator in this matter did not expressly find that the discharge was for "just cause"; rather, the arbitrator was operating under a specific contractual provision regarding absenteeism and the right of the employer to discharge where that requirement was not adhered to.

We look instead to this court's recent decision in *Ryherd v. General Cable Co.* (1986), 151 Ill. App. 3d 1. In *Ryherd*, this court held in part that a union employee whose term of employment is governed by a collective-bargaining agreement is barred from relitigating as an independent, State cause of action retaliatory-discharge issues already raised under contractual grievance or arbitration procedures. (151 Ill. App. 3d 1, 15.) For the bar to operate, the grievance must allege substantially the same factual allegations in violation of an already-recognized clear mandate of public policy as are raised in the complaint.

151 Ill. App. 3d 1, 16.

Analyzing the facts now before this court under the holding in *Ryherd,* we note that the entire grievance procedure here was concerned with a specific contractual provision which allowed the employer to discharge an employee for two consecutive days of absenteeism without consent and without proof of sickness. Thus, the only questions before the arbitrator were whether the defendant ever consented to the plaintiff's two-day absence and whether the plaintiff ever provided adequate proof that he could not report to work on those days due to physical maladies. The arbitrator's ultimate decision, then, essentially turned upon whether the defendant had violated the terms of article XXII(i)(4) of the collective-bargaining agreement. Were the plaintiff's grievance successful, he would have been entitled to reinstatement. However, although the facts surrounding a wrongful discharge in violation of contract were at issue in that proceeding, clearly no matters involving a retaliatory discharge for filing a workers' compensation claim were ever raised.

We accordingly believe that the plaintiff is not barred from maintaining an independent, tort cause of action for retaliatory discharge in violation of public policy. The plaintiff is not attempting to relitigate discharge issues already raised and ruled upon in grievance or arbitration procedures; rather, he is advancing another set of facts he believes would entitle him to recovery of damages. We therefore hold that, because the same set of alleged facts were not essential to the maintenance of both proceedings, then the subsequent, independent cause of action for retaliatory discharge in circuit court is not barred, and the motion to dismiss on this ground was improperly granted.

Our conclusion is consistent with principles of *res judicata* and collateral estoppel. The doctrine of *res judicata* bars a second adjudication when there is a previous decision on the merits and where there is identity of the parties (or their privies), subject matter, and the cause of action. (*Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 444 N.E.2d 205.) Even if different theories of recovery are sought, where the same facts are essential to the maintenance of either proceeding, and the same evidence is needed to sustain both, identity between the causes of action exists and *res judicata* bars the latter action. (*Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 454 N.E.2d 684.) This identity of actions arises when the causes are based upon a common core of operative facts. (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 421 N.E.2d 278.) As we have already intoned, no such common set of operative facts is

in question here. Moreover, under a collateral-estoppel theory, parties are precluded from relitigating as an issue in a subsequent proceeding that which was actually or necessarily decided in an earlier proceeding involving the same parties and a different cause of action. (96 Ill. App. 3d 148, 421 N.E.2d 278.) Again, the precise issue in the civil tort action here is an alleged retaliatory discharge in violation of public policy, while the precise issue under consideration in the arbitration proceeding was an alleged wrongful discharge in violation of a specific contractual provision.

Additionally, we are also confident that our finding reflects the recognized finality of arbitration where the parties have bargained for and agreed to submit their disputes for a binding arbitral decision. See *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 77 N.E. 327.

■ Taking our analysis one step further, we feel compelled to expand our comments on the motion to dismiss. It is well recognized that, in considering a motion to dismiss, all well-pleaded facts contained in a complaint must be taken as true, with all inferences therefrom drawn in favor of the nonmovant. (*Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 98 Ill. App. 3d 338, 344, 408 N.E.2d 1041, 1046.) A complaint should not be dismissed for failure to state a claim unless it clearly appears that no set of facts could be proved under the allegations which would entitle the party to relief. *Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 220, 441 N.E.2d 1333, 1335.

We hold that the motion to dismiss the plaintiff's retaliatory discharge complaint was improperly granted. We therefore reverse the order of the circuit court of Macoupin County and remand for further proceedings.

Reversed and remanded.

SPITZ, P.J., and GREEN, J., concur.