DENNIS BRAZINSKI, Plaintiff-Appellant, v. TRANSPORT SERVICE COMPANY, Defendant-Appellee.

First District (2nd Division) No. 86—3058

Opinion filed August 18, 1987.

Potter & Schaffner, of Chicago (Mark S. Schaffner and Robin B. Potter, of counsel), for appellant.

Fagel, Haber & Maragos, of Chicago (Steven J. Teplinsky and Leonard R. Kofkin, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff-appellant, David Brazinski (Brazinski), appeals from the circuit court's granting of defendant's, Transport Service Company's (Transport), motion for summary judgment.

Brazinski was employed by Transport as a truck driver from October 28, 1978, until August 25, 1983. On April 21, 1983, Brazinski filed a wage claim with the Illinois Department of Labor asserting that he and other drivers were wrongfully denied wages by Transport's policies, which he believed violated the collective bargaining agreement. Brazinski alleged a violation of the Illinois Wage Payment and Collection Act, which provides guidelines for employers paying wages due nongovernmental employees. Ill. Rev. Stat. 1985, ch. 48, par. 39m—1 et seq.

Transport was notified by the Department of Labor that Brazinski had filed a wage claim and that the matter was scheduled for a hearing before the Department of Labor on August 26, 1983.

On August 24, 1983, Bill Hovel, a Transport dispatcher, called Brazinski at home and instructed him to drive a load from Chicago to Peoria, Illinois. Brazinski informed Hovel that he had to be in Chicago on August 26, 1983. Brazinski asked Hovel if there was a backhaul (an additional assignment given after the initial assignment is completed) on the load. Hovel replied, "No, at this point there is no backhaul on it."

On August 25, 1983, Brazinski left Chicago Central Terminal, his home terminal, with a load bound for Peoria, Illinois. At the Peoria terminal, Brazinski was dispatched by Transport to deliver a load to

Decatur, Illinois. Upon his arrival in Decatur on August 25, Brazinski was instructed by William Berger (Berger), the assistant terminal manager in Chicago, to take a load to Fremont, Ohio. Brazinski informed Berger that he had to be in Chicago on August 26. Berger stated to Brazinski that "if he didn't take the load, he was going to voluntarily quit his job." After two other telephone conversations with Berger, Brazinski decided not to take the load to Ohio because he would then miss the hearing scheduled for August 26, 1983, on his wage claim. Brazinski took a bus to attend his wage claim hearing in Chicago and was not subsequently employed by Transport.

Upon returning to Chicago, Brazinski filed a grievance protesting his discharge on the grounds that he was fired in retaliation for making his wage claim. On September 21, 1983, a hearing was held by a six-person joint union-employer arbitration committee on Brazinski's grievance. While there is no record of the proceedings leading to the committee's decision, Brazinski stated in his affidavit that the grievance committee refused to hear his argument that he was fired because he filed a wage claim and explicitly instructed him that its jurisdiction was limited to issues arising under the labor contract. The committee determined that the "discharge be upheld on the basis that it was a voluntary resignation by his refusal to accept work."

Brazinski's first contention is that Federal law does not preempt his claim of retaliatory discharge. Section 301 of the Labor Management Relations Act of 1947, (section 301) provides that Federal courts shall have jurisdiction over suits for breach of collective bargaining agreements. (29 U.S.C. sec. 185(a) (1982).) While State courts also have jurisdiction over section 301 claims, principles of Federal labor law preempt inconsistent State law. (*Local 174, Teamsters v. Lucas Flour Co.* (1962), 369 U.S. 95, 104, 7 L. Ed. 2d 593, 599-600, 82 S. Ct. 571, 577.) In *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, the Supreme Court held that Federal labor law preempted a State tort action against an employer and insurer. The employee-plaintiff alleged that defendants acted in bad faith in handling the employee's claim for nonoccupational disability insurance as provided for in the parties' collective bargaining agreement. The court determined that Federal law preempted the State tort action because resolution of the claim required an interpretation of the parties' contract:

"The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a con-

tract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.

The court concluded that section 301 clearly requires preemption of a State-created tort when the existence of a duty is dependent upon the interpretation of a collective bargaining agreement. The court found that the existence of a duty by the employer to pay insurance claims in good faith was directly dependent upon the terms of the contract. Therefore, the court determined that Federal courts had jurisdiction to determine if the parties' collective bargaining agreement contained a covenant of good faith. The court, however, emphasized that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by section 301 or other provisions of the federal labor law." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.) In addition, the court stated that it would be inconsistent with congressional intent under section 301 to preempt State rules that proscribe conduct, or establish rights and obligations, independent of a labor contract. (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212, 85 L. Ed. 2d 206, 215-16, 105 S. Ct. 1904, 1912.) Accordingly, the court found that State tort laws are only subject to preemption when they purport to define the meaning of the contractual relationship. *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216-17, 105 S. Ct. 1904, 1912.

In *Caterpillar, Inc. v. Williams* (1987), 482 U.S. ____, 96 L. Ed. 2d 318, 107 S. Ct. 2425, the Supreme Court recently reaffirmed the principle that section 301 only governs claims founded directly on rights created by collective bargaining agreements, and claims substantially dependent upon the analysis of collective bargaining agreements. In *Caterpillar*, the court held that section 301 did not preempt breach-of-contract claims made by employees based on individual contracts entered into prior to the employees' being subject to a collective bargaining agreement. The court observed that section 301 does not preclude employees covered by collective bargaining agreements from asserting legal rights independent of those

agreements.

In *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308, the Illinois Supreme Court held that section 301 did not preempt a tort claim of retaliatory discharge where an employee was fired after filing a workers' compensation claim. (115 Ill. 2d 1, 9, 503 N.E.2d 308.) Citing *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, the supreme court determined that where a State tort claim was based on a duty and right firmly rooted and fixed in an important and clearly defined public policy, evaluation of that claim does not depend upon an interpretation of a collective bargaining agreement. (*Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d, 1, 10, 503 N.E.2d 308.) The court found that the plaintiff's complaint of retaliatory discharge was firmly rooted in the clearly mandated public policy of protecting employees who, whether unionized or not, exercise their rights under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)). (*Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 9, 503 N.E.2d 308.) Therefore, the court concluded that the tort of retaliatory discharge was separate and independent of any action based on a collective bargaining agreement. 115 Ill. 2d 1, 11-12, 503 N.E.2d 308.

In *Lingle v. Norge Division of Magic Chef, Inc.* (7th Cir. June 23, 1987), Nos. 85—2971, 86—1763 cons., the United States Court of Appeals for the Seventh Circuit held that the tort of retaliatory discharge is preempted by section 301 because such claims are "substantially dependent upon an analysis of the terms of the collective bargaining agreements." (Slip op. at 28.) The court reasoned that a "just cause" provision in the labor contract would provide sufficient relief to employees and a hearing on a complaint by an arbitrator would involve the same analysis as a State court's finding on an employee's action for retaliatory discharge. (Slip op. at 28-29.) The dissent noted, however, that the analysis of the court must focus on " 'whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.' " (Slip op. at 43 (Ripple, J., dissenting), quoting *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) The dissent, again citing *Allis-Chalmers*, argued that cases involving retaliatory discharge for filing workers' compensation claims were grounded in State law and do not depend on the rights established by contract. (Slip op. at 43 (Ripple, J., dissenting).) The dissent noted that plaintiffs did not file claims for the tort of wrongful discharge, which may be premised on activity directly covered by the

collective bargaining agreement. Rather, the plaintiffs' retaliatory discharge claims arose from "the state's important public policy interest—independent of the collective bargaining agreement—in preserving its workers' compensation system." (Slip op. at 44 (Ripple, J., dissenting).) As the dissent observed, an employer's defense to such a claim only requires that he demonstrate that the firing was unrelated to the employee's filing of the workers' compensation claim and does not require that employers establish "just cause" under the collective bargaining agreement. Slip op. at 44-45 (Ripple, J., dissenting), citing *Baldracchi v. Pratt & Whitney Aircraft Division, United Technologies Corp.* (2d Cir. 1987), 814 F.2d 102.

■■■ We find that the instant claim is clearly not preempted by section 301. While a Federal appeals court's decision is persuasive authority in this court, we are bound by the decision of our State supreme court in the absence of contrary authority by the United States Supreme Court. (*People v. Spahr* (1978), 56 Ill. App. 3d 434, 438, 371 N.E.2d 1261.) Moreover, we find that our supreme court's decision is more persuasive than the Seventh Circuit's decision. A claim of retaliatory discharge based on the filing of a workers' compensation claim is clearly based on public policy and is not dependent upon interpretation of a collective bargaining agreement. *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 10-12, 503 N.E.2d 308; see also *Krasinski v. United Parcel Service* (1987), 155 Ill. App. 3d 831, 508 N.E.2d 1105.

In *Allis-Chalmers*, the claim was based on interpreting the meaning of a provision of the collective bargaining agreement which provided nonoccupational insurance to the union employees. Resolution of the tort claim was, therefore, substantially dependent upon an interpretation of the terms of the collective bargaining agreement. Accordingly, section 301 preempted the claim. In contrast, the instant claim is not based on an interpretation of the labor agreement between the parties. It is, in fact, based on a violation of the Illinois Wage Payment and Collection Act, which provides guidelines for employers paying wages due nongovernmental employees. (Ill. Rev. Stat. 1985, ch. 48, par. 39m—1 *et seq.*) There is no provision in the parties' agreement which imposes any obligation or duty on the employer to follow the Wage Payment and Collection Act. Therefore, it is evident that this duty, as with the Workers' Compensation Act, is established by the legislature and is independent of the parties' collective bargaining agreement.

It is well established that "[t]he foundation of the tort of retaliatory discharge lies in the protection of public policy." (*Palmateer v.*

*International Harvester Co.* (1981), 85 Ill. 2d 124, 133, 421 N.E.2d 876.) By enacting the Wage Payment and Collection Act, the legislature clearly indicated that it is the public policy of the State to ensure the proper payment of wages to employees by employers. Therefore, we find that Brazinski's claim arises under a clear mandate of Illinois public policy, which exists independently of the parties' collective bargaining agreement, and is therefore not subject to preemption by section 301.

■ Brazinski's second contention is that the findings of the joint union-employer grievance panel are not *res judicata* as to his claim for retaliatory discharge. The grievance panel determined that Brazinski's "discharge be upheld on the basis that it was a voluntary resignation by his refusal to accept work." Article 16 of the collective bargaining agreement between Transport and Brazinski's union provides that an employee must file a grievance relating to "[a]ll differences relating to the interpretation or application of any provision of this Agreement." In this instance, however, Brazinski's claim does not involve an interpretation or application of the collective bargaining agreement. His claim relates to the tort of retaliatory discharge, a remedy independent of any contract remedy he may have had based on the collective bargaining agreement. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 149, 473 N.E.2d 1280; see *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 10-11, 503 N.E.2d 308.) Therefore, it is evident that the grievance panel had no jurisdiction over Brazinski's claim for retaliatory discharge. In fact, Brazinski stated in his affidavit that the grievance panel refused to hear his argument that he was fired in retaliation for his filing a wage claim. He stated that the grievance panel informed him that its jurisdiction was limited to issues arising under the labor contract. In the absence of any evidence that the grievance panel considered Brazinski's argument that he was discharged due to his filing of a wage claim, we find that *res judicata* principles are inapplicable. *Beckman v. Freeman United Coal Mining Co.* (1986), 151 Ill. App. 3d 47, 53, 502 N.E.2d 64; compare *Ryherd v. General Cable Co.* (1986), 151 Ill. App. 3d 1, 15, 504 N.E.2d 745.

■ Brazinski's third contention is that the trial court improperly granted Transport's motion for summary judgment where material issues of fact existed. A motion for summary judgment is properly granted if the pleadings, depositions and admissions on file, together with any affidavits and exhibits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Fooden v. Board of Governors* (1971), 48

Ill. 2d 580, 586, 272 N.E.2d 497.) The court must construe the pleadings, depositions and affidavits strictly against the moving party and liberally in favor of the opponent. (*Killeen v. R. W. Dunteman Co.* (1979), 78 Ill. App. 3d 473, 475, 397 N.E.2d 436.) Inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts, then a triable issue results. (*Killeen v. R. W. Dunteman Co.* (1979), 78 Ill. App. 3d 473, 475, 397 N.E.2d 436.) Moreover, if there is disagreement as to any material fact, the court must deny the motion and set the cause for trial. *Hernandez v. Trimarc Corp.* (1976), 38 Ill. App. 3d 1004, 1006, 350 N.E.2d 202.

 █ In order to establish a valid retaliatory discharge cause of action, the plaintiff must allege that he was discharged in retaliation for his activities and that the discharge was in contravention of a clearly mandated public policy. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876.) Plaintiff must show that his discharge was causally related to the activities which further some public policy concern. (*Slover v. Brown* (1986), 140 Ill. App. 3d 618, 620, 488 N.E.2d 1103.) A review of the facts alleged and supported by affidavits and depositions reveals that there are material facts which demonstrate that Brazinski was discharged in retaliation for filing his wage claim. Defendant contends that Brazinski's manager, William Berger, assistant terminal manager at the Chicago terminal, had no knowledge of Brazinski's complaint. In support of his position, defendant points to Berger's testimony given at his deposition. Berger testified that he has no responsibility for wage claims and is not made aware of their filing. He further testified that he had no knowledge of Brazinski's request for time off prior to his termination; that Brazinski was terminated because he refused to take a load; and that Brazinski never told him the reason why Brazinski had to get back to Chicago. Brazinski, however, points to his affidavit, deposition and other records in opposition to defendant's motion. In his affidavit, Brazinski stated that he was active in asserting his rights as an employee (he filed approximately 40 grievances against defendant during his employment there) and was also active in a union "reform" organization, Teamsters for a Democratic Union. As a result, Brazinski was involved in many activities and held many positions in opposition to his union and employer. In April 1983, Brazinski filed a wage claim with the Illinois Department of Labor against defendant. The Illinois Department of Labor notified Transport and Brazinski, in writing, of the filing of the wage claim and the scheduling of the arbitration hearing for August 26, 1983. At his

deposition, Brazinski testified that on August 24, 1983, Mr. Hovel, a dispatcher at the Chicago terminal, informed Brazinski that he was assigned to take a load to Peoria; that Brazinski informed the dispatcher that he had to be in Chicago on August 26, 1983, for his hearing before the Department of Labor; that on August 25, 1983, Berger ordered Brazinski to take a load from Decatur to Fremont, Ohio; that he refused to take the load because he would miss the scheduled hearing on his wage claim; that he suggested that he be given a load back to Chicago and that other drivers were available to take the load to Ohio; that he was discharged after refusing to take the load. In support of his contention that other drivers were available to take the load to Ohio, Brazinski has included in the record time sheets for several drivers who were located at the Decatur, Illinois, terminal on August 25 and 26. A review of these time sheets reveals that several drivers were available on each day to take a load to Ohio. Therefore, we find that there is a genuine issue of material fact which creates a triable issue.

Transport has filed a motion to strike appellant's statement of facts. This motion was taken with the case. Transport argues that Brazinski has asserted certain facts in his statement of facts which are not supported by the record. A review of the record indicates that Transport's contention has merit. In several instances, Brazinski asserts facts contrary to the testimony given at depositions by Brazinski and Berger. Therefore, we strike those portions of Brazinski's brief which do not accurately state the facts as provided for by Supreme Court Rule 341(e)(6) (73 Ill. 2d. R. 341(e)(6)).

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.