MARTIN G. McGRATH, Plaintiff-Appellant, v. CCC INFORMATION SERVICES, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—99—0655

Opinion filed June 6, 2000.—Rehearing denied July 10, 2000.

Irving M. Geslewitz and Karen L. Johnson, both of Much Shelist Freed Denenberg Ament & Rubenstein, P.C., of Chicago, for appellant.

Paul T. Fox and Michael D. Smith, both of Greenberg Traurig, P.A., of Chicago, and Elliot H. Scherker, of Greenberg Traurig, P.A., of Miami, Florida, for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Martin G. McGrath filed a complaint against his employer, defendant CCC Information Services, Inc. (CCC), in the wake of a dispute over plaintiff's stock options and a bonus. The complaint included counts alleging violations of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 1996)), breach of contract and counts seeking declaratory judgment, specific performance, and other relief against CCC. On the same day plaintiff filed his complaint, he filed an administrative claim with the Illinois Department of Labor that also alleged violations of the Illinois Wage Payment and Collection Act. Plaintiff was terminated by CCC after he failed to withdraw his lawsuit as requested by CCC. Plaintiff subsequently amended the complaint to add a count for retaliatory discharge and added as individual defendants CCC executives David M. Phillips, Leonard L. Ciarrocchi, and Gerald P. Kenney. Defendants filed a motion to dismiss the retaliatory discharge count for failure to state a cause of action. The circuit court granted defendants' motion. Plaintiff now appeals, contending that the trial court erred in dismissing the retaliatory discharge count.

Plaintiff began his employment with CCC in September 1992. While working for CCC in various capacities, plaintiff's compensation consisted of a base salary plus a bonus and incentives. From time to time, the incentive portion of McGrath's compensation included the award of stock options.

In October 1993, plaintiff was granted an unconditional option for 200 shares of common stock in the company. At that same time, he was offered a conditional option on an additional 250 shares. To earn the option on the conditional shares, plaintiff needed to meet certain performance goals for the fiscal year ending in April 1994.

In December 1993, plaintiff was promoted to a new position in a different division of the company. The performance goals that had been set to allow plaintiff to earn the option on the 250 shares of stock were not applicable to the new position and plaintiff was thus prevented from being able to meet the goals. Plaintiff met with Glenn Tullman, the president and chief operating officer of CCC at the time of plaintiff's promotion, to discuss the conditional options. According

to the complaint, Tullman told plaintiff he would no longer have to satisfy the performance goals applicable to the old position in order to earn the options. Tullman told plaintiff that he would either set new performance goals relating to the new position or, in the absence of new goals, would grant plaintiff the option on the 250 shares if plaintiff's performance in the new position through April 1994 was considered successful.

No new performance goals were established. At the conclusion of the fiscal year in April 1994, Tullman informed plaintiff that he considered plaintiff's performance in the new position to have been successful and that plaintiff had therefore satisfied the condition for earning the option on the 250 shares. Thereafter, CCC listed plaintiff's entitlement to the 450 shares (the 200 shares earned unconditionally and the 250 shares earned through his successful performance in the new position) in its stock option ledger until at least June 1996. Tullman later left the company.

CCC completed an initial public offering (IPO) of its stock and became a publicly held company on August 16, 1996. Due to a 40 to 1 stock split resulting from the IPO, plaintiff's option on the 450 shares was converted to an option on 18,000 shares.

In February 1997, plaintiff received a company memorandum listing his number of stock options at an amount that was 10,000 shares less than the amount previously listed. In response to an inquiry from plaintiff, CCC's general counsel, defendant Gerald Kenney, informed plaintiff that the option on the 250 conditional shares, since converted to 10,000 shares through the stock split, was no longer being recognized by CCC. Plaintiff then met with defendant David Phillips, CCC's chairman, president, and chief executive officer, to request that CCC honor its agreement for the conditional shares. That request was denied.

On April 24, 1997, plaintiff's counsel served a written demand on CCC demanding that the company honor the options on the disputed shares. Attached to the demand was a letter written by Tullman confirming that the options had been promised to plaintiff and had been successfully earned.

Plaintiff's demand letter of April 24, 1997, also contained a demand for an additional bonus amount plaintiff believed he was due. Plaintiff's complaint alleged that in the fiscal years ending in April 1994, 1995, and 1996, he had been paid annual bonuses calculated at 40% of his base salary. In June 1996, CCC adjusted its fiscal year to end in December of each year. Thus, the fiscal year-end bonuses for the fiscal year ending in December 1996 were to be calculated on the eight-month period from May 1996 through December 1996. The

shortened period is referred to in the record as the "stub year." In mid-December of 1996, plaintiff was informed that his bonus for the stub year would be calculated on 25% of his base salary for the stub year rather than 40%. On April 24, 1997, after receiving the bonus calculated on 25% of his base salary rather than 40%, plaintiff served a written demand on CCC for the difference between the bonus paid (25%) and the bonus to which plaintiff believed he was entitled (40%).

In a June 6, 1997, memorandum from defendant Leonard Ciarrocchi, CCC's chief financial officer and executive vice president, to other CCC executives, Ciarrocchi detailed a discussion between himself and plaintiff that had been an attempt "to bring closure to" plaintiff's questions regarding the disputed stock options and bonus. In the memorandum, Ciarrocchi stated that he had informed plaintiff that "the Company did not feel that a relationship between a senior executive and the company can exist if one is suing the other" and that Ciarrocchi had "clarified that this meant separation in the event we cannot work something out."

Plaintiff filed his initial complaint against CCC on July 11, 1997. The complaint sought a declaratory judgment and specific performance related to the disputed stock options and also contained counts for breach of contract and promissory estoppel regarding both the stock options and the disputed bonus. The complaint also contained counts alleging violation of the Illinois Wage Payment and Collection Act (the Act) (820 ILCS 115/1 *et seq.* (West 1996)) regarding both the options and the bonus. That same day, plaintiff filed a claim for wages with the Illinois Department of Labor (IDOL) pursuant to the Act.

The copy of the complaint forwarded to CCC was accompanied by a letter from plaintiff's counsel cautioning CCC not to retaliate against plaintiff for filing the complaint or wage claim. On July 17, 1997, outside counsel for CCC wrote a letter to counsel for plaintiff. In the letter, counsel stated that he had been provided with a copy of the private lawsuit filed on behalf of plaintiff. CCC's counsel noted that the litigation "was filed notwithstanding the separate and independent Wage Claim Application you provided to the Illinois Department of Labor on behalf of [plaintiff]." The letter continued:

> "As CCC has already expressed to [plaintiff] on more than one occasion, CCC will not tolerate an employee, and particularly a senior executive, prosecuting a private lawsuit against CCC while remaining in CCC's employ. [Plaintiff's] employment with CCC will terminate effective Friday, July 18, 1997, at 5:00 p.m. unless, by that time, [plaintiff] has provided CCC with his written confirmation that he will dismiss the Litigation by the close of Court business on Wednesday, July 23, 1997, and will not re-file that lawsuit."

Plaintiff was terminated on July 18, 1997, after he failed to withdraw his suit and otherwise comply with the terms of the letter.

After being terminated, plaintiff filed an amended complaint that added a count alleging that, because he had been discharged for exercising his rights under the Act, CCC's actions in terminating him amounted to retaliatory discharge. The amended complaint also added CCC executives Phillips, Ciarrocchi, and Kenney as defendants. Defendant CCC moved to dismiss plaintiff's retaliatory discharge claim, contending that the count failed to state a cause of action because Illinois courts had not extended the tort of retaliatory discharge to the type of claim made by plaintiff. In addition, defendants moved to dismiss the count as it pertained to the individual defendants on the basis that Illinois law did not provide for bringing retaliatory discharge actions against individual officers of a company.

On June 23, 1998, the trial court dismissed plaintiff's count alleging retaliatory discharge. In doing so, the court found, among other things, that plaintiff's claim clearly did not strike at the heart of a citizen's social rights, duties, and responsibilities, and that to grant the relief requested by plaintiff would expand the "very narrow and very defined" tort of retaliatory discharge. Plaintiff's motion for a finding pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)) was granted and plaintiff now appeals, alleging that the trial court erred in dismissing his retaliatory discharge action.

Plaintiff first contends that because Illinois law clearly recognizes the tort of retaliatory discharge as applying to a discharge for exercising rights guaranteed by the Act, the trial court erred in dismissing the retaliatory discharge count for failure to state a cause of action. A trial court's dismissal of an action pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)) for failure to state a cause of action is reviewed *de novo*. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424, 712 N.E.2d 330 (1999).

■ In Illinois, an at-will employee may be terminated at any time for any or no reason. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128, 421 N.E.2d 876 (1981). Illinois courts, however, have recognized the tort of retaliatory discharge as a limited and narrow exception to the at-will employment rule. *Palmateer*, 85 Ill. 2d at 128; *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505, 568 N.E.2d 870 (1991). The tort was first recognized as a cause of action in Illinois in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978), where the Illinois Supreme Court let stand an action in which the plaintiff alleged he had been terminated for exercising his statutory rights under the Workers' Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et*

*seq.*). Several years later, in *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981), the supreme court expanded the tort to encompass instances in which an employee is terminated for acts of "whistle-blowing." It is now well established that an action for retaliatory discharge may be maintained where a plaintiff can demonstrate that he was discharged in retaliation for his activities and the discharge was in contravention of a clearly mandated public policy. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 35, 645 N.E.2d 877 (1994). Allowance of retaliatory discharge actions as an exception to the at-will employment rule is an outgrowth of recognition that "a proper balance must be maintained among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Palmateer*, 85 Ill. 2d at 129.

Plaintiff contends that this court, in *Brazinski v. Transport Service Co.*, 159 Ill. App. 3d 1061, 513 N.E.2d 76 (1987), has already expressly recognized that the tort of retaliatory discharge is applicable where an employee is discharged for asserting his rights under the Act. In *Brazinski*, the plaintiff, a truck driver, alleged that he was terminated in retaliation for bringing an Act claim against his employer, the defendant. In the course of holding that the plaintiff's claim existed independently of a collective bargaining agreement between the parties and was not therefore subject to preemption by federal law, the court noted that, by enacting the Act, the state legislature had "clearly indicated that it is the public policy of the State to ensure the proper payment of wages to employees by employers." *Brazinski*, 159 Ill. App. 3d at 1067. Therefore, the court continued, the plaintiff's claim arose under a clear mandate of Illinois public policy. *Brazinski*, 159 Ill. App. 3d at 1067. The court also found that the trial court had erred in granting summary judgment on the retaliatory discharge claim because there were genuine issues of material fact which created a triable issue. *Brazinski*, 159 Ill. App. 3d at 1069.

In the instant case, the trial court held that recognizing the tort of retaliatory discharge for exercising rights under the Act would expand the tort beyond its current limitations. Plaintiff contends that, in light of the clear holding in *Brazinski*, the trial court's holding was "mystifying."

Defendants point out that *Brazinski*, decided 13 years ago, has not been cited by any reported Illinois decision as creating a new type of

action in which retaliatory discharge may apply.[1] Moreover, Illinois Supreme Court cases subsequent to *Brazinski* do not lend support to plaintiff's interpretation of that case as extending the tort of retaliatory discharge to actions under the Act. Most recently, the supreme court stated that "a review of Illinois case law reveals that retaliatory discharge actions are allowed in two settings." *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 376, 706 N.E.2d 491 (1998). Those settings, the court continued, are where an employee has been discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act, or where the discharge is in response to an employee's "whistle-blowing." *Jacobson*, 185 Ill. 2d at 376. Also notable are subsequent opinions of this court's second division, the same division that decided *Brazinski*. In *Paris v. Cherry Payment Systems, Inc.*, 265 Ill. App. 3d 383, 385, 638 N.E.2d 351 (1994), we stated that "Illinois courts have applied the tort of retaliatory discharge in only two situations: where the discharge stems from asserting a worker's compensation claim and where the discharge is for certain activities referred to as 'whistle-blowing.' " Similarly, in a second division case decided just one year after *Brazinski*, this court noted that "[t]hus far, Illinois courts have applied the tort of retaliatory discharge in only two situations: where the discharge stems from asserting a workers' compensation claim and where the discharge is for certain activities which some cases and commentators refer to generally as 'whistle-blowing.' " *Abrams v. Echlin Corp.*, 174 Ill. App. 3d 434, 443, 528 N.E.2d 429 (1988). Further, the supreme court has repeatedly and consistently emphasized a goal of restricting the tort of retaliatory discharge. See, *e.g.*, *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 467, 722 N.E.2d 1115 (1999) (noting that the supreme court has "consistently sought to restrict the common law tort of retaliatory discharge"); *Zimmerman*, 164 Ill. 2d at 37 (noting that the supreme court has "expressed its disinclination to expand the tort of retaliatory discharge" and that appellate court decisions have similarly followed a narrow interpretation of the cause of action); see also *Paris*, 265 Ill. App. 3d at 385 (noting that other than cases where the discharge stems from a workers' compensation claim or "whistle-

---

[1]*Brazinski* is relied upon in an unreported federal case, *Tesch v. Txport, Inc.*, No. 93 C 4367 (N.D. Ill., September 8, 1995). In *Tesch*, the court, following *Brazinski*, found that a firing in retaliation for bringing an Act claim as alleged by the plaintiff violated a clearly mandated expression of public policy and was thus actionable under the tort of retaliatory discharge. However, decisions of the federal courts construing state statutes are not binding on this court. See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 182, 384 N.E.2d 353 (1978); *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 273, 711 N.E.2d 1194 (1999).

blowing," "Illinois courts have consistently refused to expand [retaliatory discharge] to encompass a private and individual grievance"); *Mitchell v. Deal*, 241 Ill. App. 3d 331, 333, 609 N.E.2d 378 (1993) (noting that "[w]hen asked to further expand the scope of the tort action beyond workers' compensation and 'whistle-blower' related discharges, *** our supreme court has drawn the line and denied plaintiffs' retaliatory discharge causes of action").

■ Plaintiff's claim does not concern either the Workers' Compensation Act or an act of "whistle-blowing." In light of our supreme court's consistent reluctance to expand the tort of retaliatory discharge, numerous statements noting that retaliatory discharge has only been recognized in actions relating to workers' compensation and "whistle-blowing," and the failure of any Illinois court, including the court that issued *Brazinski*, to recognize *Brazinski* as expanding the reach of the tort to discharges in violation of the Act, we are compelled to find that plaintiff's interpretation of *Brazinski* as expressly or implicitly extending the tort of retaliatory discharge to actions under the Act is without merit.[2]

We now turn to plaintiff's contention that, notwithstanding the current state of the law, the tort of retaliatory discharge should be made available to an employee who is discharged for exercising his rights under the Act.

■ The purpose of the Act is to "ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." *Mueller Co. v. Department of Labor*, 187 Ill. App. 3d 519, 524, 543 N.E.2d 518 (1989). As part of its scheme to further the purposes of the Act, the legislature has enacted section 14(c), which provides, in relevant part:

> "Any employer *** who knowingly discharges *** any employee because that employee has made a complaint to his employer, or to the Director of Labor or his authorized representative, that he or she has not been paid in accordance with the provisions of this Act, or because that employee has caused to be instituted any proceeding under or related to this Act, *** is guilty, upon conviction, of a Class C misdemeanor." 820 ILCS 115/14(c) (West 1996).

---

[2]Plaintiff also relies upon a letter in the record in which the chief legal counsel of IDOL opines that section 14(c) of the Act is "a clearly mandated expression of public policy sufficient to support the Illinois tort of retaliatory discharge." The letter, written in response to plaintiff's counsel's request for an opinion after the circuit court granted defendants' motion to dismiss in the instant case, does not persuade us of the correctness of plaintiff's position. We note that IDOL, like plaintiff, relies upon *Brazinski* as support for its interpretation.

Plaintiff, in his complaint, alleges that section 14(c) "reflects a clearly mandated expression of public policy that employers may not force employees to choose between exercising their rights under the [Act] and keeping their jobs." We disagree.

■ There is no precise definition of what constitutes clearly mandated public policy. *Palmateer*, 85 Ill. 2d at 130. It can generally be said that public policy concerns what is right, just, and affects the citizenry of the state collectively. *Palmateer*, 85 Ill. 2d at 130. Merely citing a constitutional or statutory provision in a complaint will not give rise to a retaliatory discharge cause of action. *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 527, 478 N.E.2d 1354 (1985). Clearly, one could argue that section 14(c) and the Act in general reflect a public policy. See *Mueller Co.*, 187 Ill. App. 3d at 524 (stating purpose of Act); *People ex rel. Martin v. Lipkowitz*, 225 Ill. App. 3d 980, 985, 589 N.E.2d 182 (1992) (holding that "[a]n employer's denial of benefits earned by its employees burdens the State financially and socially, such as by decreasing the tax base and potentially depleting State assistance funds"). However, although a discharge in contravention of public policy may be a legal wrong, an employer retains the right to fire workers at will in cases that do not involve a *clearly mandated* public policy. *Palmateer*, 85 Ill. 2d at 130. To constitute a clearly mandated public policy exception that would justify application of the tort of retaliatory discharge, the matter at issue must strike at the heart of a citizen's social rights, duties, and responsibilities. *Palmateer*, 85 Ill. 2d at 130; *Paris*, 265 Ill. App. 3d at 385.

■ The policy concerns underlying the Act, including section 14(c), are economic. Public policies associated with social and economic regulation are less likely to be held sufficient to support claims of retaliatory discharge. *Leweling v. Schnadig Corp.*, 276 Ill. App. 3d 890, 894, 657 N.E.2d 1107 (1995); *Fowler v. Great American Insurance Cos.*, 653 F. Supp. 692, 697 (N.D. Ill. 1987). We find that the dispute over plaintiff's conditional stock options and calculation of a bonus is economic in nature and does not "strike at the heart" of plaintiff's social rights, duties, and responsibilities as is required to maintain a retaliatory discharge action. Further, the effect of plaintiff's dispute and subsequent termination on the citizenry collectively is incidental at best. Rather, plaintiff's claim is more in the nature of a private and individual grievance insufficient to justify a claim of wrongful discharge. See *Shearson Lehman Brothers, Inc. v. Hedrich*, 266 Ill. App. 3d 24, 30, 639 N.E.2d 228 (1994); see also *Buechele v. St. Mary's Hospital Decatur*, 156 Ill. App. 3d 637, 643, 509 N.E.2d 744 (1987) (holding that the right to file a lawsuit in which an individual injury is claimed is a purely personal right not involving any clearly mandated public policy).

The conclusion above finds additional support in *Abrams v. Echlin Corp.* 174 Ill. App. 3d 434, 528 N.E.2d 429 (1988), where the plaintiff also invoked the Act in attempting to maintain a retaliatory discharge action. In *Abrams*, the plaintiff and his employer disagreed over what year an agreed setoff in commissions paid on returned merchandise should take place. The plaintiff maintained that he was terminated after he threatened to take legal action to enforce his rights under the Act. This court first noted that plaintiff had failed to identify in his complaint or brief what provisions of the Act were violated by his employer's action. *Abrams*, 174 Ill. App. 3d at 440. The court continued by finding that the matter, which involved interpretation of a written agreement between the parties, "could hardly be classified" as an issue that struck at the heart of a citizen's social rights, duties, and responsibilities, but was instead a "purely personal and private dispute." *Abrams*, 174 Ill. App. 3d at 440, 442. The court also discussed *Kavanagh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242 (N.D. Ill. 1983). In *Kavanagh*, 566 F. Supp. at 245, the court, after finding that the plaintiff had no standing under the Act, held that protecting an at-will employee from discharge whenever he retained an attorney in a dispute over wages was not a result mandated by any public policy favoring the exercise of rights under the Act. The *Abrams* court concluded that the reasoning of *Kavanagh* appeared to be applicable to the case before it, where the plaintiff had threatened to take " 'necessary legal action to secure payment.' " *Abrams*, 174 Ill. App. 3d at 441.

Further, we disagree with plaintiff's contention that a claim pursuant to the Act is analogous to a workers' compensation action to such an extent that it would be incongruous not to extend the tort of retaliatory discharge to discharges related to an employee's exercise of rights under the Act. Actions pursuant to the Act are distinguished from workers' compensation actions by the fact that the Act provides a nonexclusive remedy for employees asserting wage claims. The fact that the Workers' Compensation Act acted to supplant employees' common law rights clearly played a role in the supreme court's decision to allow the tort of retaliatory discharge in *Kelsay*, 74 Ill. 2d at 181-82 (noting that where employees' common law rights had been supplanted by the Workers' Compensation Act, workers who chose to retain their jobs rather than pursue their rights under the Workers' Compensation Act would be left without either a common law or statutory remedy). Distinguishing the Act on this basis finds support in *Mitchell v. Deal*, 241 Ill. App. 3d 331, 609 N.E.2d 378 (1993). In *Deal*, the plaintiff was excepted from workers' compensation coverage due to his status as a farm laborer. The court found that "with the excep-

tion of workers' compensation coverage," the facts were indistinguishable from *Kelsay*, where a retaliatory discharge action was allowed to be maintained after the plaintiff was terminated for filing a workers' compensation claim. *Deal*, 241 Ill. App. 3d at 335. However, because the plaintiff in *Deal* was not covered under workers' compensation, his legal remedy was not "statutorily restricted." *Deal*, 241 Ill. App. 3d at 335. Thus, the tort of retaliatory discharge was not available to the plaintiff "unless and until our legislature may suggest it to be otherwise." *Deal*, 241 Ill. App. 3d at 335.

Finally, as set out in our discussion of plaintiff's reliance on *Brazinski*, the Illinois Supreme Court has repeatedly expressed its reluctance to expand the tort of retaliatory discharge. The statements of the court certainly militate against a finding that the tort should be expanded on the facts before us in this case.

In sum, where his termination did not violate a clearly mandated public policy, we find that plaintiff fails to state a compelling case for expansion of the tort of retaliatory discharge.

■ Plaintiff next contends that the Act should be interpreted as containing an implied civil remedy for damages due to a retaliatory discharge. According to plaintiff, such an implied remedy is necessary to promote the statutory intent of protecting employees who exercise their rights under the Act.

As noted earlier, section 14(c) of the Act provides that an employer who discharges or discriminates against an employee for exercising his rights under the Act is guilty of a Class C misdemeanor. 820 ILCS 115/14(c) (West 1996). Provision of a criminal penalty does not preclude finding that a private cause of action for damages is implied in a statute. *Bybee v. O'Hagen*, 243 Ill. App. 3d 49, 51, 612 N.E.2d 99 (1993). In deciding whether a statute grants a private cause of action by implication, a court should examine whether the plaintiff is a member of the class for whose benefit the act was enacted, whether allowing private actions is consistent with the underlying purpose of the act, whether plaintiff's injury is one the act was designed to prevent, and whether allowing private actions is necessary to provide an adequate remedy for violations of the act. *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 308, 597 N.E.2d 616 (1992).

We find our supreme court's recent decision in *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 722 N.E.2d 1115 (1999), to be instructive. There, employees of a nursing home claimed they were terminated in violation of the Nursing Home Care Act (210 ILCS 45/3—608 (West 1996)) for cooperating with the Department of Public Health, which was investigating the death of a nursing home resident. The Nursing Home Care Act provided that it was a business offense

for any person to intentionally retaliate or discriminate against an employee for contacting or providing information to any state official, or for initiating, participating in, or testifying in an action for any remedy authorized under the act. 210 ILCS 45/3—318(a)(5) (West 1996). The supreme court found that where the legislature had, through the enactment of the above section, provided a statutory framework to encourage reporting violations and to punish retaliation, it was unnecessary to imply a private right of action for employees subjected to retaliatory conduct. *Fisher*, 188 Ill. 2d at 467. In so ruling, the court noted its consistent efforts to restrict the common law tort of retaliatory discharge. In light of the court's historic reluctance to expand the tort, it found that it must also hesitate to imply such actions under a statute without explicit legislative authority. *Fisher*, 188 Ill. 2d at 468.

With the supreme court's recent admonishment in mind, we find that a private action for retaliatory discharge is not necessary to provide an adequate remedy for discharging an employee who attempts to enforce his rights under the Act. The legislature has explicitly provided for criminal sanctions against employers or their agents who retaliate against employees who attempt to enforce their rights under the Act. We find such criminal penalties, which carry the possibility of a jail term and/or a monetary fine, will adequately safeguard the purposes of the Act and will adequately deter persons from acting in retaliation. Finding an implied civil remedy for retaliation in violation of the Act is therefore unnecessary to effectuate the purposes of the Act.

Having so ruled, we find it unnecessary to address the parties' arguments as to whether our supreme court's opinion in *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 694 N.E.2d 565 (1998), would bar an agent from being held personally liable in an action where an implied civil remedy for retaliatory discharge existed under a statute and the statute specifically imposed personal liability.

Accordingly, the order of the circuit court dismissing plaintiff's count for retaliatory discharge is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.