**Emil RIEDLINGER, Plaintiff,**

v.

**HUDSON RESPIRATORY CARE, INC., d/b/a Teleflex Medical, Defendant.**

**No. 05 C 6769.**

United States District Court, N.D. Illinois, Eastern Division.

March 21, 2007.

Lisa R. Kane, Janice A. Wegner, Kevin R. Vodak, Lisa R. Kane, Wilson Skalinder, Lisa Kane & Associates, P.C., Chicago, IL, for Plaintiff.

Michael J. Ranallo, Holland & Knight LLC, Chicago, IL, Stephen C. Sutton, Baker & Hostetler LLP, Cleveland, OH, for Defendant.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendant Hudson Respiratory Care, Inc.'s Motion for Summary Judgment. For the following reasons, the Motion is granted.

## I. BACKGROUND

### A. Facts

Plaintiff Emil Riedlinger ("Riedlinger") was hired by Defendant Hudson Respiratory Care, Inc. ("Hudson") as a Senior Plastics Engineer at Hudson's Arlington Heights, Illinois facility in October 2004. Riedlinger is a citizen of the state of Illinois. Hudson is a corporation incorporated under the laws of the state of California, with its principal place of business in Durham, North Carolina. Hudson manufactures products used in respiratory health care, including sterile bottled water, humidifier and nebulizer adapters, and Addipak products.

In his First Amended Complaint, Riedlinger makes the following allegations. He indicates that he has over twenty-nine years of experience in the health care product manufacturing industry. Several months after being hired by Hudson, Riedlinger became aware of the presence of mold in the production areas of the Arlington Heights facility. After air quality testing confirmed the presence of mold in the facility, Hudson held several managerial meetings in April 2005 regarding this problem. Riedlinger attended these meetings. Hudson then directed Riedlinger to find an individual with the qualifications to resolve the mold issue. Riedlinger contacted Jim Pickens ("Pickens"), a certified mold remediator from Environmental Health Services, Inc.

Pickens performed further testing at Hudson's Arlington Heights plant, and advised Hudson on April 13, 2005 that toxic mold was present in the production and warehousing areas of the facility. Pickens advised facility managers that professional cleaning would be required to decontaminate the entire plant. Plant Manager Kevin Rush ("Rush"), and other managerial employees, however, decided to assign Hudson employees to mold abatement. Riedlinger was one of the individuals assigned, and he advised plant management of the mold abatement progress in the manufacturing area.

Additional testing by Pickens, however, indicated that high levels of toxic mold remained in the facility's production and warehousing areas despite the abatement efforts. Riedlinger alleges Hudson ignored these findings, and continued production of, *inter alia*, sterile respiratory therapy bottles intended to be used by respiratory patients. Riedlinger then alleges that he advised members of plant management in May 2005 of his opinion that the facility would be shut down if the mold problems were ever discovered by the United States Food and Drug Administration ("FDA"). Riedlinger alleges that he held a good faith, reasonable belief that continued production at the facility would be a violation of federal law, but he does not specify which statute or regulation he believed that Hudson was violating. Moreover, Riedlinger does not allege that he ever contacted the FDA or any other governmental agency regarding Hudson's alleged mold problem.

On June 15, 2005, plant management met with Riedlinger and informed him that

another Hudson employee, John Posey, who was directly involved in the mold abatement efforts, was no longer with the company. Rush then presented Riedlinger with a Performance Improvement Plan ("PIP"), in which Riedlinger was accused of failing to meet performance expectations. Rush allegedly indicated to Riedlinger that "[i]f you don't sign this document by the end of the day, you will be terminated." Riedlinger disagreed with the assessment of his performance, and declined to sign the PIP. Rush then allegedly terminated Riedlinger.

The next day, Riedlinger returned to the plant to retrieve his personal belongings. Rush then directed Riedlinger to meet with him and a Human Resources representative. During this meeting, Riedlinger was informed that he had not been terminated, but merely suspended. Riedlinger was instructed to take a couple of days off, and to return on June 20, 2005 with the signed PIP. Riedlinger returned on June 20, 2005 and again refused to sign the PIP. He did not sign the PIP conditionally, under protest, or provisionally in any respect. Riedlinger alleges that he was immediately terminated.

## B. Procedural History

Riedlinger filed his First Amended Complaint for common law retaliatory discharge on December 30, 2005. Hudson filed its Motion for Summary Judgment on January 3, 2007. Riedlinger filed his Response on February 5, 2007, and Hudson filed its Reply on February 20, 2007. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."

FED.R.CIV.P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1320 (7th Cir.1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educational Services, Inc.,* 176 F.3d 934, 936 (7th Cir.1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R.CIV.P. 56(c); *see also Perdomo v. Browner,* 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also First Nat'l Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 922 (7th Cir.1996). The choice between reasonable inferences from facts is a jury function. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. *Ameritech Benefit Plan Comm. v. Communication Workers of Am.,* 220 F.3d 814, 821 (7th Cir.2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922–23

(7th Cir.1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hospital and Medical Center*, 328 F.3d, 890, 892–93 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

### B. Retaliatory Discharge under Illinois Law

■■■ In this diversity action, the substantive law of the forum state, Illinois, controls. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 712 n. 1 (7th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In Illinois, the general rule is that an employer may discharge an employee for any reason, or no reason at all. *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (1992); *Crampton v. Abbott Labs.*, 186 F.Supp.2d 850, 855 (N.D.Ill.2002). The tort of retaliatory discharge, however, is an exception to the employment-at-will doctrine. *Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876, 878 (1981). In order to establish a valid claim for retaliatory discharge, an employee must show that he or she "has been (1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy." *Hartlein*, 176 Ill.Dec. 22, 601 N.E.2d at 728; *Lanning v. Morris Mobile Meals, Inc.*, 308 Ill.App.3d 490, 242 Ill.Dec. 173, 720 N.E.2d 1128, 1130 (1999). Illinois courts have indicated that there are only two situations in which a cause of action for retaliatory discharge arises: where an employee makes a workman's compensation claim which leads to his or her termination, *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 357 (1978), and where an employee's termination results from his or her "whistleblowing" activities. *Palmateer*, 52 Ill.Dec.

13, 421 N.E.2d at 879–80; *McGrath v. CCC Info. Servs.*, 314 Ill.App.3d 431, 246 Ill.Dec. 856, 731 N.E.2d 384, 390 (2000).

On January 1, 2004 the Whistleblower Act, 740 ILL. COMP. STAT. 174/1–174/35, became effective in Illinois. Pursuant to this Act, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILL. COMP. STAT. 174/15. This statute has not received a great deal of attention from either Illinois courts or federal courts in the state of Illinois. The courts that have dealt with this statute, however, have determined that the Whistleblower Act has codified the common law tort of retaliatory discharge in Illinois. *Sutherland v. Norfolk S. Ry.*, 356 Ill.App.3d 620, 292 Ill.Dec. 585, 826 N.E.2d 1021, 1026 n. 4 (2005) ("The 'whistleblower' cause of action has since been codified in the Whistleblower Act."). These courts have interpreted this statute to provide that an individual qualifies as a whistleblower only if he or she reports allegedly unlawful activity to some governmental authority or agency. *Smith v. Madison Mutual Ins. Co.*, 05 CV 142DRH, 2005 WL 1460301, at *1 (S.D.Ill. June 21, 2005); *Jones v. Dew*, 06 C 3577, 2006 WL 3718053, at *4, 2006 U.S. Dist. LEXIS 90740, at *10–11 (N.D.Ill.Dec. 13, 2006). In other words, where an employee alleges that he or she was terminated in retaliation for revealing information only to his or her employer, there is no cause of action for retaliatory discharge in Illinois. *Jones*, 2006 WL 3718053, at *4, 2006 U.S. Dist. LEXIS 90740, at *11 ("Plaintiff clearly alleges that she made formal complaints to her supervisors and CEO.... She does not allege that she made any complaints to a government or law en-

forcement agency. Thus, she falls outside the protections of the [Whistleblower] Act.").

The legislative history of the Whistleblower Act confirms that the *Smith* and *Jones* courts have correctly interpreted this statute. Representative Fritchey, sponsor of the Act in the Illinois House of Representatives, explained that the intent of the statute was to codify the common law tort of retaliatory discharge. "[Y]ou do not have a cause of action for retaliatory discharge today stemming from going to the authorities to disclose a violation of law ... Common sense would tell you that you should have that protection and this law would codify that." Ill. H.R. Trans. 2003 Reg. Sess. No. 63. Fritchey then very clearly explained that this tort applied only to those individuals who brought their concerns regarding illegal activities at work to some government agency.

> What this [bill] does is prohibit an employer from taking any actions to prevent an employee from disclosing information to the government, if the employee has reasonable cause to believe that there was a violation of law ... [W]hat we're saying is that a boss cannot fire an employee for going to the authorities and saying, something is going on that's a violation of the law ... [Y]ou can't terminate them solely for going, in good faith, to the authorities to let the authorities know that there's been a violation of law occurring.

*Id.* In addition, the Synopsis of the Whistleblower Act presented to the Illinois Senate confirms that the proponents of this statute intended that "whistleblowers" were those employees who took their concerns about workplace violations to the authorities.

> [The Whistleblower Act] [p]rovides that an employer may not: make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation; retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation....

Ill. S.B. Stat. 2003–2004 Reg. Sess. S.B. 1872.

 Taking the persuasive reasoning of the *Smith* and *Jones* courts into account, and following the clear legislative history of the Whistleblower Act, this court therefore interprets Illinois law to provide that an employee has a cause of action for retaliatory discharge in Illinois only if he or she has revealed information he or she reasonably believes discloses a violation of a law or regulation to some government or law enforcement agency. Where an employee has revealed this information only to his or her employer, there is no cause of action in Illinois for retaliatory discharge.

## C. Hudson's Motion for Summary Judgment

 In its Motion for Summary Judgment, Hudson asserts that the undisputed facts demonstrate the following: (1) Riedlinger was never discharged by Hudson, (2) Riedlinger is not a whistleblower because he never complained to plant management or the FDA about the presence of mold in the facility, and (3) Riedlinger, if he was terminated, was fired for his failure to sign the PIP, not because of any complaints about mold. Because the court determines that the undisputed fact that Riedlinger never complained to the FDA about any alleged mold contamination at

the facility is dispositive of this case, the court does not reach Hudson's other assertions.

In his First Amended Complaint, Riedlinger alleges that he advised plant management about the presence of mold in the facility. Riedlinger also alleges that he held a good faith belief that the mold contamination in the facility was a violation of federal law. However, as the court has noted, Riedlinger does not allege that he disclosed this information to the FDA or any other outside authority. Likewise, Riedlinger's Local Rule 56.1(b) Statement of Material Facts indicates that he apprised company management of the mold problem, but there is no indication in this Statement that Riedlinger ever went to the FDA. Most importantly, Riedlinger admitted during deposition testimony that he never approached the FDA with his concerns.

Q. Now, with respect to the testing results, you never went to the FDA to complain about or to report testing results; right?

A. No, because I was afraid I would lose my job.

. . .

Q. And you didn't go to the FDA to report anything related to the testing results or any concerns about the health and welfare of the employees; correct?

A. That's correct.

Riedlinger Dep., at 374–75. Riedlinger thus cannot be considered a Whistleblower in Illinois as a matter of law. *See* 740 ILL. COMP. STAT. 174/15; *Smith*, 2005 WL 1460301, at *1 ("While the [Whistleblower] Act prevents retaliation against an employee who disclosed information to a government or law enforcement agency, it does not protect an employee who disclosed information to her own company."). Hudson's Motion for Summary Judgment is therefore granted.

## III. CONCLUSION

For the foregoing reasons, Defendant Hudson Respiratory Care, Inc.'s Motion for Summary Judgment is granted.

IT IS SO ORDERED.